FILED
NOV 0 8 2013
U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

TROY BARRETT

    Plaintiff,

v.                                           Civil Action No. 3:13cv163
                                          JURY TRIAL REQUESTED

AMERICAST, INC. a
Virginia corporation and
CONCRETE PIPE & PRECAST, LLC,
a Delaware company,

    Defendants.

## COMPLAINT

1. This Court has federal question subject matter jurisdiction pursuant to § 4323 (b)(3) of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 – 4335.

2. This Court has personal jurisdiction over the defendants because the defendants, Americast Inc., a Virginia corporation, and Concrete Pipe & Precast, LLC a Delaware company, are authorized to do business and were, at all times relevant to this Complaint, doing business within the district of the United States District Court for the Northern District of West Virginia.

3. Troy Barrett was hired as a customer service representative / inside sales by Americast, Inc. in September, 2011 to work at its West Virginia office. Mr. Barrett's annual compensation at the time of his termination from employment was about $45,000 plus the benefits described in Americast's benefits handbook.

4. Mr. Barrett was qualified for this position based on his education and work experience.

5. Mr. Barrett's job performance was evaluated by Americast's general manager, Scott Crumpler, in January, 2012. The positive evaluation resulted in a merit increase in compensation. Indeed, Mr. Barrett did not receive any disciplinary write-ups during his employment at Americast and was a valued employee.

6. During all times relevant to this Complaint Mr. Barrett served the Air National Guard as a Crew Chief, Airman First Class and was stationed at the 167th Air National Guard located in Martinsburg, West Virginia.
7. Toward the end of May, 2012 Mr. Barrett gave notice by forwarded e-mail to Americast's representative, Brian Fleece, that on Friday, June 8, 2012 Mr. Barrett had been called to active duty military service at the 167th ANG.
8. For all or nearly all of the remainder of June, 2012 Mr. Barrett was on active duty military service.
9. For the period of July 2, 2012 through July 6, 2012 Mr. Barrett was available for work at Americast and did work at his regular job at Americast.
10. For the period of July 9, 2012 through July 12, 2012 Mr. Barrett was required to perform drills at the 167th ANG.
11. It was Mr. Barrett's belief that he would be eligible to return to regular private employment at Americast effective July 16, 2012.
12. However, on or about July 8th or July 9th Mr. Barrett gave notice by e-mail to Brian Fleece that Mr. Barrett would not be released from his military service duties until August 9, 2012. Mr. Fleece made no direct response to that e-mail notice.
13. Upon information and belief, Americast merged with another corporation known as Hanson Pre-Cast. The entity that emerged from the merger was Concrete Pipe & Precast, LLC.
14. Concrete Pipe & Precast, LLC is authorized to do business and does business from its office located at 405 Corning Way, Martinsburg, West Virginia.
15. Concrete Pipe & Precast, LLC is engaged in West Virginia in the manufacture and sale of concrete products.
16. News of the merger was published on a website on or about July 20, 2012.
17. Concrete Pipe & Precast, LLC's sole member/manager is Americast, Inc.
18. As a result of the merger and in order to continue his employment, Mr. Barrett was required to re-apply for employment and submit to a post-offer drug screen.
19. On August 8, 2012 at about 9:00a.m. Mr. Fleece telephoned Mr. Barrett and inquired whether Mr. Barrett would be in the "Americast" office that day. Mr.

    Barrett agreed to come by the office around lunch time and actually arrived at about 11a.m.

20. When Mr. Barrett arrived he found Mr. Fleece in a conference room. Although Mr. Barrett had thought that the likely purpose of the meeting was to bring him up-to-date with the merger of Americast and Hanson Pre-Cast, Mr. Fleece promptly informed Mr. Barrett that Mr. Barrett was not going to be retained and that Americast was "going in a different direction." Mr. Fleece added that while Mr. Barrett had been away in military service Americast had received complaints from customers about Mr. Barrett.

21. Mr. Barrett stayed silent in the face of this revelation. Whereupon Mr. Fleece offered that "this has nothing to do with the ANG" as accurately as Mr. Barrett can recall Mr. Fleece's words.

22. After Mr. Barrett returned to his home following the meeting with Mr. Fleece, Mr. Barrett sent a message to Americast's general manager and requested a few minutes for a call and explanation as to why he had been discharged from employment.

23. On August 10, 2012 David Holsinger, a human resources manager, telephoned Mr. Barrett and admitted to Mr. Barrett that mistakes had been made. Mr. Barrett asked whether his termination was motivated by Mr. Barrett's military service as Mr. Barrett believed that his service was the reason for his termination. The HR manager promised to investigate but did not contact Mr. Barrett again.

24. Whether by title or otherwise, the essential job duties of the position of a customer service representative / inside sales still needed to be performed after Mr. Barrett's termination.

25. A motivating factor in defendants' decision not to retain Mr. Barrett was his performance of military service and/or obligation to perform service.

26. Defendants, either separately or jointly, would have retained Mr. Barrett in their employ in the absence of Mr. Barrett's performance of military service and/or obligation to perform service.

27. Mr. Barrett's active military service was for a period of less than 91 days and therefore, Defendants, either separately or jointly, had a duty to re-employ Mr. Barrett in the position of a customer service representative / inside sales.

28. Defendants' actions, either separately or jointly, constitute unlawful discrimination as prohibited by the Uniformed Services Employment and Reemployment Rights Act of 1994.   Mr. Barrett is entitled to (A) an order requiring defendants to comply with the Act; (B) compensation for lost wages and benefits suffered by reason of defendants' failure to comply with the Act; and, (C) liquidated damages in an amount equal to his lost wages and benefits, plus attorney's fees, costs, and interest as allowed by law.

**WHEREFORE**, Troy Barrett respectfully requests all legal and equitable relief to which he is entitled pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 – 4335.

Dated this the 8th day of November, 2013.

_/s/ David M. Hammer_
David M. Hammer, Esq.
WV Bar No. 5047

HAMMER, FERRETTI AND SCHIAVONI
408 West King Street
Martinsburg, WV  25401
Telephone (304) 264-8505
Facsimile (304) 264-8506
Email:  dhammer@hfslawyers.com

Counsel for the Plaintiff